Corwin, J.
The bill alleges that the complainants hold the following claims against the estate of Albert G. Catlett, *dec’d. to-wit: D. & D. McDonald & Co., $932.93; Eobert George & Son, $1,057.76; Silas Potts, $139.67; James Dalzell, $63.46; M’Gills, Bushfield & Eoe, $635.64; M’Gills & Bushfield, $417.21; Bailey, Brown & Co., $486.22 ; James Graham, $273.32; Bagaley & Smith, $292.47; James M’Caskey, $493.88—all of which have been duly presented to and allowed by Alexander M’Laughlin, one of the administrators of Catlett, who died in March, 1848, leaving Catharine Catlett, his widow, and three minor children his heirs at law. That Alexander M’Laughlin and Eichard Aten were appointed administrators, and that the personal estate of said decedent is wholly insufficient to pay the debts owing by said deceased, and the estate is represented to be insolvent.
The bill further charges that, at the death of Catlett, defendant, Henry Aten, his father-in-law, was seized in fee of lots 52 and 53 in Wellsville, in trust for Catlett; on which lots were erected large and valuable buildings, consisting of the store, warehouse and dwelling house of said Catlett, of the value of $5000. That the real estate was purchased by Catlett from Michael Tiernan and Alexander Young, assignees of Albert G. Eichardson, the payments therefor being made by Catlett to the assignees. That when said payments were made and Catlett entitled to conveyance, he caused the conveyance to be made to his father-in-law, Henry Aten, who has since held the legal title. That Catlett continued to use and occupy the property as his own, and was the equitable owner thereof, from the time of the purchase to the time of his death. That Henry Aten combining, etc., with his son Eichard, one of the administrators, pretends that the property belongs to Henry Aten; that he is the sole legal and equitable owner thereof, and that it should not be subjected to the payment of the debts of the estate. That Henry Aten further contriving to injure, etc., the creditors, and to cover up said estate, pretends to be a creditor of the estate, and to hold large claims against the same, the amount of which complainants can not specify ; that said claims are not legal, etc.
*The prayer of the bill is, that Aten may set forth his title to the property, how and for what purposes he acquired title; also, what claims he has against the estate; that said premises may be subjected to payment of complainants’ debts, and the pretended claims of said Henry Aten cancelled, so far as they may interfere- *254 with the full liquidation of complainants’ claims, and for general relief.
The answer of Henry Aten, Sr., not under oath, admits the insolvency of Catlett’s estate; denies being seized of lots 52 and 53 in trust for Catlett, or that the buildings erected thereon were the property of Catlett. Admits that the real estate was in the first instance purchased and bargained for by Catlett from the assignees, but denies that any payments were made by Catlett to said assignees ; denies that Catlett was entitled to conveyance, he not having paid the purchase-money. Respondent having paid, or being liable for the purchase-money to the assignees, caused the conveyance for the same to be made to himself, as in equity and justice he had a right to do. Admits that he permitted Catlett to occupy the property to the time of his death, upon the same terms that he permitted his own sons to use and occupy other property of his, they paying taxes and taking care of the same.
Respondent denies that Catlett continued to use and occupy the property as his own, or that he was the equitable owner thereof from the period of his purchase to the time of his death; denies that it ought to be appropriated to the payment of complainants’ debts; denies all fraud, or intention to cover up said estate, and claims to be a bona fide creditor of the estate, holding large claims against the same, the nature and amount of which are set forth in the answer.
As to the nature, etc., of his title, respondent states: That Catlett having contracted for the purchase of the lots with the assignees for $2,892.75, and respondent having become individually liable for •some of the payments, and jointly liable with Catlett for others to the assignees, and Catlett not being able to meet the payments.as they became due, agreed with respondent that if he would pay the purchase-money to *the assignees, as the payments became due, they should convey the lots to respondent; in accordance with which agreement, the assignees, by deed dated September 15,1844, conveyed the lots to respondent; in consideration of which conveyance, respondent has performed his agreement with Catlett, as well as Catlett’s agreement with the trustees—and has fully paid the purchase-money; by virtue of which respondent claims title; Catlett using and occupying said lots 'and making valuable improvements thereon, with which respondent stands charged on said Catlett’s books.
*255 Tb the answer of Henry Aten there is a replication. None of the other defendants have answered.
Upon this state of pleading, a volume of testimony was taken and the cause referred to a master, upon whose report the court of common pleas rendered a decree in favor of complainants, and ordered the sale of the premises. The court also found that defendant Aten had paid $2,400 to Catlett, which by him was paid on the lots; and confirmed the master’s report, requiring that that sum, with interest, should be first paid to Aten out of the proceeds of the sale. From the evidence in the case, we are satisfied with the confirmation of the master’s report by the court of common pleas, and that the decree ought not to be disturbed, except in this, that no notice is taken of the dower interests of the widow of said Catlett. It being found that Catlett died seized of an equitable title to the lots in question, the right of his widow to dower therein is clear; and no decree should be rendered requiring a sale of the premises, and disposing of the proceeds of such sale in disregard of her rights.
The principal subjects of disagreement in this case are, as to the jurisdiction of courts of chancery, in a case like the present; and, whether the proceeds of the sale shall go to the complainants alone, or to the general creditors of the estate. We certainly do not admit the right of a creditor, by any proceeding, at his own option, to transfer the settlement of an estate from the probate court to a court of equity. But cases have arisen, and may arise again, when, from the *peculiar relations of the administrator to the estate, or his connection with a title sought to be converted into assets, in the opinion of a majority of this court, the aid of a court of equity may be invoked by a creditor, not for a general settlement of the estate of which he is a creditor, but for the purpose of reaching and placing in the hands of the administrator assets which might otherwise not be reached. But, this object accomplished, the court of equity will have performed its function, and leave the distribution of the assets thus obtained to the probate court.
The case of Watson v. Clapp’s Heirs and Adm’rs, 8 Ohio, 248, is in point, and fully sustains this view of the jurisdiction of a court of equity for such purpose. The claim of the complainants, to appropriate the whole of the proceeds of the property, to the exclusion of the other creditors of the estate, can not be maintained. Upon the death of a debtor, his estate, of whatever description, stands for the payment of all of his general creditors alike; and *256 the right of one general creditor to exclude another can not be-supported upon any principle, although he may have been most, vigilant, and by his vigilance may have increased the assets in the hands of the administrator.
Finding no objection to the jurisdiction of this court, sitting as a court of equity, in a case like the present, and being satisfied that, the report of the master commissioner is well sustained by the evidence, a decree may be taken for the sale of the property, subject to the dower estate of the widow of said Catlett, deceased, providing for the satisfaction of the lien of said Henry Aten, Sr., for the amount so by him paid on said lots and for the -payment of the costs of this proceeding, and requiring the surplus to be paid over by the master to said administrators for distribution amongst the-creditors of said estate.

Decree accordingly.

Banney, J., having been of counsel, did not sit.